IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ADALBERTO OTERO, *et al.*<br><br>PLAINTIFFS<br><br>v.<br><br>JC PENNEY<br><br>DEFENDANT | CIVIL NO. 13 – 1467 (JAG) |

OPINION AND ORDER

GARCÍA–GREGORY, District Judge

  Before the Court is a Motion for Summary Judgment filed by JC Penney Puerto Rico, Inc. ("JC Penney" or "Defendant"), Docket No. 28, which was duly opposed, Docket No. 32. JC Penney contends that Mrs. Yolanda Rivera's ("Mrs. Rivera" or "Plaintiff") claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Constitutions of the United States and the Commonwealth of Puerto Rico, and Puerto Rico Act No. 100 ("Act No. 100"), Title 29 P.R. Laws Ann. § 146 *et seq.*, should be dismissed as a matter of law. JC Penney argues that she was terminated from her employment, not because of her age, but rather because the company experienced a business reorganization resulting in staff reduction. JC Penney further contends that Plaintiff failed to establish her *prima facie* case of discrimination because no individual replaced Mrs. Rivera in her position. Plaintiff counters this assertion by claiming that there is a genuine issue of material fact as to this matter, and that the moving party is, therefore, not entitled to judgment as a matter of law. Upon careful examination of the

relevant facts, the applicable law and the parties' arguments, this Court finds that the Defendant's Motion should be **GRANTED**.

## FACTUAL BACKGROUND

A. THE PLAINTIFF'S CASE

During her 19-year tenure at JC Penney, Mrs. Rivera worked as a Cosmetics Counter Supervisor ("CCS") for Glamour's make-up counter. Mrs. Rivera excelled in her work; so much that she surpassed her sales goal for the year 2011. See Docket No. 29, Ex. 9. Plaintiff's responsibilities as CCS were, in essence, selling products, directing sales strategies and promotional events, identifying promotional opportunities, merchandising inventory, reporting sales performance and volumes, training and supervising sales associates, as well as overseeing the customer service process. See Docket No. 29, Ex. 7. On May 20, 2012, JC Penney notified Mrs. Rivera that pursuant to a restructuring plan, the CCS position would be eliminated and that she would be laid off for not achieving a $300,000 annual sales target. See Docket No. 32-1 at 6. At the time of her termination, Mrs. Rivera was fifty-one (51) years old.

As the Plaintiff sees it, her age was the underlying reason for her discharge. Accordingly, Mrs. Rivera argues that at no point during her employment with JC Penney was she instructed to comply with a $300,000 sales target. Ultimately, JC Penney's rationale for discharging Plaintiff is merely a pretext for discriminatory animus against her because said target would prove unattainable in light of the make-up counter's low inventory levels. Id. This, in addition to the fact that a significantly younger Beauty Expert was hired to take on Plaintiff's sales duties, is sufficient to establish a *prima facie* case of age discrimination under the ADEA. Id. at 7. Moreover, because Plaintiff has succeeded in demonstrating the existence of a federal claim for age discrimination, this

Court should also extend its supplemental jurisdiction to entertain her state law claims under Act No. 100 and the Constitution of the Commonwealth of Puerto Rico.

### B. THE DEFENDANT'S CASE

JC Penney moves to dismiss Mrs. Rivera's ADEA claim pursuant to Fed. R. Civ. P. 56 on the grounds that she has failed to establish her *prima facie* case of age discrimination because she did not provide any evidence proving that age was the motivating factor for Plaintiff's termination. See Docket No. 28 at 5. Accordingly, Defendant claims that Plaintiff's discharge was nondiscriminatory, as it was the result of a nation-wide restructuring process to improve the company's business operations.

JC Penney claims that Mrs. Rivera's replacement was hired as a part-time Beauty Expert (i.e. sales associate) with no managerial or supervisory duties, whereas the CCS position involved tangible supervisory tasks, such as employee training and merchandising inventory. Id. at 5-6. Given that the replacement was not hired for the same position held by Mrs. Rivera while working for JC Penney, Plaintiff fails to meet the fourth-prong of her *prima facie* case of discrimination under the burden-shifting framework of McDonnell Douglas v. Green, 411 U.S. 792 (1973).

Furthermore, Defendant claims to have a non-discriminatory, legitimate reason for Mrs. Rivera's discharge, namely, a business reorganization resulting in staff reduction. As part of this streamlining process, JC Penney decided to eliminate all CCS positions whose assigned counters did not reach annual sales of $300,000 during the previous year. See Docket No. 28 at 8. Because Mrs. Rivera's counter did not meet this goal, her position was eliminated, and her duties were distributed between a new sales associate and the current Cosmetics Manager. Id. It follows, according to the Defendant,

that Mrs. Rivera's termination was a result of sound business judgment, rather than a discriminatory animus.

Finally, JC Penney argues that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state claims. In the event that the Court decides to do so, however, summary judgment should also be granted in favor of the Defendant. Because JC Penney complied with the Act's just-cause requirement for purposes of terminating Mrs. Rivera's employment, her discrimination claim falls flat and ought to be dismissed.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the non-movant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant may establish that a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## LEGAL ANALYSIS

### A. ADEA Claim

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Furthermore, the "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age." Mesnick v. General Electric Co., 950 F.2d 816, 825 (1st Cir. 1991) (citing Freeman v. Package Machinery Co., 865 F.2d 1331, 1341 (1st Cir. 1988)).

Under the ADEA, the employee bears the ultimate burden of proving "that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., 557

U.S. 167 (2009) (construing the phrase "because of such individual's age" in 29 U.S.C. § 623(a)(1) to mean than an individual would not have been fired but for his or her age); see also Torrech-Hernandez v. GE, 519 F.3d 41, 48 (1st Cir. 2998). In short, the ADEA requires proof that age was the determinative factor, as opposed to a motivating factor, of an employer's decision to terminate an employee. See Loeb v. Textron, 600 F.2d 1003, 1011 (1st Cir. 1979).

When there is no direct evidence of age discrimination, as is usually the case, the Court employs the McDonnell Douglas burden-shifting framework to evaluate the employee's evidence. See Cameron v. Idearc Media Corp., 685 F.3d 44, 48 (1st Cir. 2012). Under the framework, the employee shoulders the initial burden, as he or she must establish by a preponderance of the evidence, a *prima facie* case of age discrimination using admissible evidence. Burdine, 450 U.S. at 253 (citation omitted). Under McDonnell Douglas, a *prima facie* case of age discrimination may be established by demonstrating that: (1) the employee was at least 40 years old at the time of the firing; (2) the employee was qualified for the position that he or she had held; (3) the employee suffered an adverse employment action; and (4) the employer subsequently demonstrated a continuing need for those services. See Bonefont-Igaravidez v. Int'l. Shipping Corp., 659 F.3d 120, 124 (1st Cir. 2011) (citing Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009)); see also Pages-Cahue v. Iberia Lineas Aereas de Espana, 82 F.3d 533, 546 (1st Cir. 1996). In ADEA cases, a plaintiff may satisfy this fourth requirement by establishing that the defendant hired a replacement employee who is younger than a plaintiff who is over 40 years of age. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996).

In the context of a staff reduction like the one in the instant case, this fourth requisite may be satisfied by showing that the employer either did not treat age neutrally or retained younger employees in the same position. See Cruz v. Bristol-Myers Squibb Co., 699 F.3d 563, 571 (1st Cir. 2012) (citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995)). If the employee succeeds in establishing a *prima facie* case, then a rebuttable presumption of age discrimination is activated. See Burdine, 450 U.S. at 254.

Once a plaintiff establishes a *prima facie* case, a burden of production is placed on the defendant's shoulders to articulate a legitimate, non-discriminatory justification for the adverse employment action. Id. "It is important to note, however, that although the McDonnell Douglas presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (citing Burdine, 450 U.S. at 253).

If the employer successfully carries this burden of production, the presumption of discrimination disappears. Davila v. Corporacion de Puerto Rico, 498 F.3d 9, 16 (1st Cir. 2007) (citing Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 78 (1st Cir. 2005)). Consequently, the burden shifts back to the employer to demonstrate "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citing Burdine, 450 U.S. at 253). Ultimately, this last phase of the McDonnell Douglas standard "merges with the ultimate burden of persuading the court that" the plaintiff was the victim of intentional age discrimination. Id.; see also Cameron, 685 F.3d at 48.

In the instant case, JC Penney does not contest that Mrs. Rivera has established the first three elements of her *prima facie* case of age discrimination under the ADEA. See Docket No. 28 at 5. Indeed, Plaintiff has shown that she was over forty years of age at the time of her dismissal; that she was qualified for her work position; and that JC Penney nevertheless terminated her. See Docket No. 29, Exs. 1–2. Defendant disputes, however, that Plaintiff has met the fourth element of her *prima facie* case. Specifically, Plaintiff has not shown either that JC Penney did not treat age neutrally by replacing Mrs. Rivera, or that she was replaced by a younger person to perform her same duties. See Mulero-Rodriguez, 98 F.3d at 673; Sanchez, 37 F.3d at 719.

In LeBlanc v. Great American Ins. Co., the First Circuit clarified the replacement standard by stating that:

> [a discharged employee] 'is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.' Rather, 'a person is replaced *only* when another employee is hired or reassigned to perform the plaintiff's duties.'

LeBlanc, 6 F.3d at 846 (1st Cir. 1993) (citations omitted) (emphasis added). Furthermore, it is well established that although "[a]n employee holding a different title or position may be considered a replacement by being reassigned to perform most of Plaintiff's duties," Aponte Diaz v. Navieras Puerto Rico, Inc., 130 F.Supp.2d 246 (D.P.R. 2001), the Plaintiff still bears the burden of showing that her alleged replacement has "job skills roughly equivalent to [her own]." Mulero-Rodriguez, 98 F.3d at 673; Sanchez, 37 F.3d at 719.

The only evidence in the record concerning the fourth element of her *prima facie* case is a deposition of Mrs. Rivera declaring that she was informed by her former co-workers that her replacement, Mrs. Yaritza Betancourt, was doing what she used to do,

namely, selling products at the Glamour make-up counter. See Docket No. 32, Ex. 1 at 52. Additionally, Plaintiff claims having felt discriminated on the basis of age after noticing that her alleged "replacement" was "more or less over thirty years old." Id. at 33.

This statement is faulty in various respects.[1] First, Plaintiff's statement lacks information regarding her alleged replacement's job skills and whether they are roughly equivalent to her own. To the contrary, Plaintiff defers entirely to JC Penney regarding any knowledge of her replacement's position and responsibilities, including whether she performs any other duties other than selling products. See Docket No. 32 at 6.

Second, Mrs. Rivera also fails to explain how she knows that her duties were, for the most part, reassigned to her replacement. Although this Court has refused to require a mechanical approach to prove that a replacement has taken place, see Carreras v. Baxter Healthcare Corp. of Puerto Rico, Inc., 955 F.Supp. 14, 17 (D.P.R. 1997), the truth is that Plaintiff has provided no evidence whatsoever that her replacement was instructed to perform most of her duties, namely, directing sales strategies and promotional events, identifying promotional opportunities, merchandising inventory, reporting sales performance and volumes, training and supervising sales associates, as well as overseeing the customer service process. It follows that Plaintiff has failed to show a continued need for the same services and skills that she had been rendering. Moreover, Plaintiff does not dispute that her duties were reassigned between the new sales associate and the Cosmetics Manager, thus failing to raise a factual dispute as to her alleged replacement.

---

[1] The Court notes that Plaintiff's allegations regarding information she claims to have received from her former co-workers are unsupported by admissible evidence, and as such is hearsay evidence which cannot be considered on summary judgment. See Fed. R. Evid. 801(c); see also Davila, 498 F.3d at 17 (finding no abuse of discretion in exclusion of hearsay statement absent any evidence disclosing the contents of any such conversation).

There being no evidence pointing to the functional similarities in her replacement's duties, Plaintiff's claim amounts to "conclusory allegations, improbable inferences, and unsupported speculation." Forestier, 440 F.3d at 21. In this regard, Mrs. Rivera has failed to establish a genuine issue of material fact as to age-based discriminatory intent against her. To the extent that Mrs. Rivera has failed to satisfy the fourth element of her *prima facie* case, this Court **DISMISSES** Plaintiff's ADEA claim with prejudice.

## B. CONSTITUTIONAL CLAIM

Plaintiff's non-specific constitutional claim is **DISMISSED** with prejudice to the extent it fails to satisfy the state-action requirement of the Fourteenth Amendment. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982).

## C. SUPPLEMENTAL JURISDICTION OF STATE LAW CLAIMS

The Supreme Court has held that a district court should, in its discretion, weigh the values of comity, "judicial economy, convenience and fairness to litigants" in determining whether to exercise jurisdiction over state-law claims in each case. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). Furthermore, it is well established that a "district court must exercise 'informed discretion' when deciding whether to exercise supplemental jurisdiction over state law claims." Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)).

Having considered these factors, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Both parties have mostly focused on the federal claims; the state law claims have received far less attention. Moreover, these claims are currently pending resolution before the Puerto Rico Court of Appeals.

Accordingly, considerations of federalism and judicial economy counsel this Court to **DISMISS** Plaintiff's state law claims without prejudice.

## CONCLUSION

Wherefore, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment and **DISMISSES** Plaintiff's ADEA and constitutional claims with prejudice. Moreover, Plaintiff's state law claims are **DISMISSED** without prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico this 22d day of January 2015.

<u>s/ Jay A. García–Greogry</u>
Jay A. García–Gregory
United States District Judge
